May it please the Court. My name is Dennis Shields, and I'm here on behalf of myself and on behalf of my son, MDS. Do you wish to reserve any time for rebuttal? Yes, Your Honor. Can I reserve five minutes for rebuttal, please? That's fine. I just want to ask at the outset, I'm going to ask the same question of your opposing counsel. Neither of you mentioned federal rule of civil procedure 52A, which states that the granting or refusing an interlocutory decision, in granting or refusing an interlocutory decision, a court must state the findings and conclusions that support its actions. There was nothing done here by the district court, so shouldn't we vacate that order in order to allow the court to explain the reasons for its decision? That is an alternative you can do, Your Honor. I mean, I did take the position that, obviously, with respect to legal issues, that the review here would be de novo, and that since she had not made any determination that you could ipso facto take the standard that should have been applied at the lower court regarding a modified de novo review. But, yes, there is case law out there that says that one of the alternatives you can do. What I would ask, though, is that the stay remain in effect that you have regarding the FBA while it's remanded, if that's what you decide to do, to send it back to her to make specific findings. As I would point out, she didn't have the certified record in front of her. I mean, she had excerpts in front of her. I think the position she took is that you had five days adherence and things were on a rush-rush basis, so that is an alternative that you could send it back. But if you do send it back for her to make specific findings, I respectfully request that the stay that you have in effect now regarding the FBA. What's the harm if the FBA goes forward? Your Honors, there are a number of things regarding the FBA. First of all, I have not consented to the FBA, and to the extent that there is any consent that I had prior or were given prior, you know, I revoke that. And I respectfully submit that I have every right to revoke. I mean, there is some provision under the CFR regarding that I would have the right to revoke any special services at all. And as far as I understand it doesn't deal with change in placement, though, does it? I mean, it's not itself. I mean, if we're dealing with the state put provision, just because he's having a test doesn't in itself change his placement. Well, I've objected to it, so I think I do have a liberty interest in that. I've explained in the briefs why I have an objection to it. Just to pick up on that, you're relying on, what, the state put provision of the IDEA? That is one of the other alternatives dealing with mainstreaming. They've taken a position that since my ex-wife wants to go ahead and change the placement, and with respect to the mission. Yeah, the question is, I mean, state put says that he remains in his current educational placement unless the local educational agency and the parents otherwise agree. Parents, plural. It is plural. But do we look to federal or state law to determine whether the agreement of both parents is required? Your Honor, I think the closest that came to this was the Cox letter. I don't know if you've recognized that. And it goes back. That's the 2009 letter. Yeah, it's from the Department of Education, the United States Department of Education. And basically they said, and that dealt with what I was saying before dealing with the, apparently one of the parents was saying, I revoke everything. And they had joint legal custody, you know, regarding all services. And basically the Department of Education only said it was non-binding to take the position. You know, this really is a matter of state law. The interesting thing about the Cox letter is, I mean, we're familiar with it, but I don't recall it being mentioned in any of the briefs. No, it wasn't mentioned in any of the briefs. In fact, I just found it yesterday when I was going through Google. I vaguely remembered it, but I couldn't, you know. But last night I went on Google and there it was. So I do have a copy of it if you want to have it. No, we have it. Okay. But it does get to that issue. But you're right, Your Honor, it wasn't mentioned. But I would, you know, it is there. And I haven't taken the position that all services should be revoked. But I do say that it's sort of an indication, too, about my right to revoke as a father. And I said all the other things, too. First of all, I don't know, you know, there was some indication there about whether there would be interaction with the child or not if there was an FBA. Ms. Moretz said there might be. Apparently there was some representation made to this court to the clerk that there would not be. I don't know. You know, I don't do FBA, so I don't know. Well, let's assume for the moment that state law governs what parent can consent. But it would seem if it were state law, then the thing we would probably look to would be the divorce-custody agreement. I assume there was a custody agreement in this case or an order of a court. Yes, Your Honor, there was an order, yes. And what did it say with regard to who can make these decisions with regard to education, for example? It's a joint legal custody, Your Honor. She has primary physical custody, and as I pointed out in my brief, I have moved now to get primary physical custody of the children. There's a hearing schedule or there's a conference schedule for next Tuesday. But now we're going to – Yeah. The status at the time this all occurred with regard to Pensabury was in the past. So does the order say anything about who can make these decisions, whether it must be joint, or can the person with primary custody make that decision? Well, I respectfully submit that she brought – my ex brought this. I'm just asking a fact question. What did the order or the agreement of custody say? I think it says that you make the decision jointly. I mean, we have joint legal authority or joint custody. Well, what do you do when you can't reach an agreement on a decision? You go to court? That's what we've done in the past. In fact, that's what was done when she was trying to compel me to do an ADOS test and other tests. As I respectfully submit, Your Honors, is that this was an issue that was brought up previously with the family court. She tried to compel me to agree to an autistic diagnosis test as well as other tests. And basically then there was a conference in Chambers with the family court judge. Technically, if you really want to – I think that's all – I mean, respectfully, so that's not relevant to the question being asked, yeah. Regarding an FBA. Yeah. I think it's in the same genre of what she did before, trying to compel me to do an ADOS test and other related tests. I think the exact thing is in there with the briefs, exactly what that said. But, you know, for all intents and purposes, I mean, she could go back and raise it. The question was whether an FBA affects the placement of the child. It affects the child itself regarding what's in his education record. First of all, you're dealing with, first of all, me and giving consent. Two, regarding what is the impact of an FBA. First of all, is there going to be interaction with the child against my desires? Three, you know, and if they're going to have interaction with the child, I should certainly be aware of that. Three, Your Honors, whatever the results are that it could be put in his education record, and I did raise the issues regarding what the findings could be. I mean, you have in there that, with this respect, I mean, this DSM-5. They've changed the whole idea about what this is, and it does concern me that some of the findings regarding that could now be used to change the child's, you know, classification as just speech impairment. And I've had no problem with that. I mean, I consider that something that, you know, you're not supposed to label a child. In fact, there is a provision that I did find in the IDA that says that you're not trying to, that they try to avoid labeling a child. But back to Judge Vannessi's question. Here you have, it's a functional behavioral assessment. In other words, they're trying to come in and find out, you know, what it is that we're talking about. What is, just a practical question, what's the concern about finding out from experts what the problem might be so that we can try to pin this down? From my personal viewpoint, Your Honors, is that I don't think there is a major issue regarding that. I mean, if you look at what they say on the issues, is that, you know, that he could be nudged back to paying attention. But by the same token, my concern is that there might be findings in the fact that could change his classification from speech and language impairment to intellectual disability. There are findings in there, and I think that in their brief the appellees recognized that it could be. And if you go out there and then you have these findings for the child, I mean, to the extent, you know, apparently the child has been told by his mother that he's autistic. And, you know, that's an effect on the child. But if you disagree, and she's not an expert in this area, and neither are you, then why not have an expert come in and make an assessment? Maybe it's something else, and why not find out the facts? Well, it's not only that, too. It's also the order that's been made, too. I've been given basically three people to choose that they've told me that I have to take. I'm not permitted to talk to the persons at all. I respectfully submit that they don't have to choose. They're trying to get somebody independent, are they not? I mean, they claim it's independent, but they're handpicked. And I have no right to talk to them, no right to interview them. But you do have a right to check out as to whether those persons are qualified, at least based on the perceptions of them in the community. Well, if it's going to be forced down my throat, with all due respect, I certainly should have the right to also choose about who I want. You know, that's the other alternative, too. But I respectfully submit, Your Honors, I'm very concerned about this whole thing. I don't know where this is going regarding FBAs. You know, they keep changing the definitions. Let me come back, because I keep coming back to Judge Manaske's question. The three people that were given to you that might do this functional behavioral assessment, have you had an opportunity to check them out, and do you perceive that they are impartial or partial? The only thing they've given to me, Your Honor, is the resumes. And I don't know, I haven't had a chance to talk to them. I don't know what the relationship is with them. I don't know what came about as to picking these three particular individuals. You received the resumes back in May? I received them soon after you picked them. And I did move immediately, you know, I moved to stay this thing. And they went ahead and picked someone anyway. From what I understand, they've been proceeding ahead. I think if you read their brief, they say it's almost about done. The only thing they haven't done is issued it. And from what I understand, they already discussed it with my ex-wife. I haven't discussed it with me, but apparently they did. So this whole thing I seem to be shut out of the whole process, which is another problem I have because I do have a liberty and interest to decide what's best for my children. And my children being labeled. And there is a provision in the IDA that says the children aren't supposed to be labeled, 20 U.S.C. 1400 C5F. Now, I'm getting more and more. This isn't my area. I understand. Okay. Judge, you guys have a question? I just had a question. This is perhaps more mundane, but just analytically, okay, the state put provision. I'm thinking maybe you did a little more work than you had to in your brief. The state put provision, according to our drinker case, you don't have to prove the do you have to prove the usual elements for preliminary injunction? No, right? The state put provision within the IDA. As far as I'm concerned, I take the position it's an automatic injunction. They've taken the position knowing their letters and it's set forth in the complaint that I've written that there was an exchange of letters saying if he comes out and says that the placement should be changed, we're going to change it immediately because we read it that if one parent agrees with the hearing officer, that that's enough. That's the agreement exception to the state put provision. Yeah, my position was it says parents, plural. All I'm saying is analytically, if we're to write an opinion, is do we go by the normal injunctive standards or do we go by what's in the statute, which is the state put provision? Well, I've relied just on the state put provision because also you're dealing with the FBA, and I think under 5 U.S.C. Section 705, which I think deals with administration. I don't think it just deals with federal administration. And if we're talking about the FBA, which you're talking about, if we don't agree, if we say it's not a change of placement, you're relying on traditional preliminary injunction standards to have that state. Well, I think that under 705 it focuses more on irreparable harm. There is some case law I think that indicates there that, you know, you do have to show some sort of thing regarding probable success of the merits. But it seems it's more lenient. It seems like if you can prove. And we are talking about an administrative decision. I mean, and I have exhausted my administrative remedies, and I have said that it's not sufficient. I'm bringing it forward, and I'm bringing it to court, and I think I'm entitled to supplement the record. I've also pointed out the things that I was not permitted to raise. And really, the thing I'd really like to raise in this whole thing is that the hearing officer went into me to only the time period that my child was in. That's on the merits, and that's not before us. Let me hear from Mr. Warner, and we'll get you back on rebuttal. All right. Thank you, Your Honor. May it please the Court, Mr. Shields. Thomas Warner for the Appalachia-Pennsbury School District. Obviously, you know my first question, what about Rule 52? Why shouldn't we just vacate and remand in order to get a complete record here? Your Honor, I think you make an excellent point. Frankly, because the district court's decision favored the district's position, our first question would be curious as to the exact reasoning employed by Judge Tucker below. We would be glad to hear what she had to say about it, because we think the facts and the law support the district's position in all respects. So we certainly think that would be a fair way to dispose of the matter. All right. Assuming we get beyond that, the state provision, as Mr. Shields noted, says that parents must otherwise agree before you leave the current educational placement, and parents is plural. My question is to him and is to you, is do we look to federal or state law to determine whether the agreement of both parents is required? Your Honor, unfortunately, in our estimation and our research, federal and state law are unclear as to whether we're looking for both parents, plural or parent. So what we've relied upon and, Your Honor, as we've seen in our briefing has been cases that have dealt with the state provision. And just to be clear, remember the Second and the Seventh Circuits have held that the IDEA's regulatory scheme explicitly relies upon the state to assign parental rights. Correct. And the district is not disputing that both mother and father in this case have legal custody and decision-making rights on behalf of the child. So don't they tell you, do we look there as opposed to some federal law or regulation? I think that's an accurate way to put it, that we would look there, Your Honor, because, to be honest with you, it's not part of the district's argument that Mr. Shields, for example, does not have legal custody. He does, which is why we afforded Mr. Shields' pendency during the pendency of the due process hearing. The district did not move forward with this recommended change of placement until it had the hearing. Well, it looks like, if we get to the merits, the Pennsylvania law requires both parents to consent to any major educational decision. Correct. What we're arguing with federal law is that we allowed for the due process proceeding to play through, and now we have a hearing officer appointed by federal law in the IDEA who's made a determination that that placement recommended by the district is appropriate and another biological parent in agreement. But the point is that they have, I think, as I understand it, shared legal custody here. That's defined as the right of more than one individual to legal custody of the child. And once you have custody in Pennsylvania, that means the right to make major decisions on behalf of the child, including but not limited to educational decisions. Sure. And that is why, Your Honor, the district provided both parents with prior written notice of what it intended to do, allowed the due process hearing to play out over five sessions, did not, as Mr. Shields would, to ram something down his throat, maintained the previous placement, and is now relying on the pending provision of federal law in the IDEA to say, why is one parent more important than the other, especially when the child's education is at stake? Let's assume for the moment you don't have the parents agreeing. I'm sure that's not rare. So what can you do? Isn't the answer you can go to family court to try to have the family court make a decision? Your Honor, there's a position that its job is to make educational recommendations and disputes, you know, domestic disputes between parents are left between the parents. If you don't want to go to the family court to try to overrule one parent who's disagreeing with a position of the other parents and perhaps the school district, then aren't you bound by the state put provisions? We agree we're bound by state put. We differ with Mr. Shields on the interpretation thereof. So there's no debate whatsoever that the district's bound to it. We just think it's a matter of first impression as to whether both parents and whether Congress intended both parents to be in agreement with the hearing officer's placement order or whether one parent is sufficient. The point is, based on what we just talked about, does it really make any difference what Congress has said, especially if Congress hasn't preempted because it appears that you're saying this is a matter for state law? We believe that it matters what Congress has said, Your Honor, because It can, but I thought you agreed here that it's the idea of custody, shared legal custody, who makes major educational decisions is a matter under Pennsylvania law for both parents to agree. Yes, we agree with that, Your Honor, and the district submits that it is not depriving the parents of the opportunity to make those decisions. It is abided by the process. Well, Mr. Shields wouldn't be here if he didn't feel he was deprived. Sure, and he has the opportunity to play that out in the due process hearing. That's the district's position on that. He had five days, five full sessions to present it. But I know in the ordinary course, you have a due process hearing. Let's say there's only one parent involved. Correct. And that parent does not consent to the results of the due process hearing. You can't put the new plan in place until they have their opportunity to take it to the next level, take it to court. That is correct, Your Honor, and if the parent and the hearing officer agree on placement, that Section D of that regulation that we're talking about does allow that to go forward. So that essentially becomes the appendant placement in that circumstance. It's not necessarily an exception to pendency. It actually is pendent because you have an agreement between the state-level hearing officer and the parent in that case. We would also suggest that this court has recently dealt with the pendency provision in the M.R. v. Ridley case, and this provision of the pendency regulation generally comes up, almost every case where it comes up is in cases of where parents are seeking tuition reimbursement as a remedy. And we have decisions where a hearing officer says, District has not provided appropriate programming for the child. We're ordering right now that the district reimburse the parent for private school tuition. If the court were to adopt Mr. Shields' interpretation of the pendency provision and we had those cases come forward, that would stand for the premise that if one parent goes through due process hearing, works hard, five sessions, six sessions, however long it takes, gets tuition reimbursement as a remedy, all it takes is one other parent to say, I don't want this on the record, and that other parent who fought for it is now stuck paying for private school tuition for three or four years while the merits appeal works its way through the system, that hardly seems equitable and hardly seems to be what Congress would have intended for that provision to be. Go ahead. But isn't the result there for the parents to take the issue to family court and work it out there? Absolutely. In addition, we'd love nothing more than the parents to work it out in this case. It just doesn't seem like that's going to be possible. Or have a court order. Sure, absolutely. And the district would absolutely abide by that order if it was produced by family court. It understands that there are two parents with vastly differing opinions about the child's education. Stepping aside from that, the district does have an obligation to make educational recommendations it believes are best for the child. It has done so and has obtained a hearing officer's agreement with that recommendation. And now the district's position is every day the child is not receiving those new services is harmful. We have a child who is now in seventh grade who is reading below a first grade level and writing, struggling to write complete sentences when his peers are writing essays. And every day that he's not getting that extra help is a day the district feels like it is not following through with its duty under the IDEA. Now moving away from the child's placement at this point, the FBA, is that subsumed within the state put provision? Our argument, Your Honor, is that it's not included within the pendency provision because it's not dealing with placement. It is, as Your Honor pointed out before, an assessment. There is a record below that establishes that that is a line of inquiry. There was testimony produced at the district court at the evidentiary hearing that it consists of a line of inquiry with teachers and observation of a child. There's even an argument that parental consent is even necessary for an FBA. There's no testing involved because it mainly involves observation. How is it used? Is it just a diagnostic tool? Yeah, it's actually required by Pennsylvania law. By state regulation, any time an IEP team believes a child has learning interfering behaviors, it's first required to do a functional behavior assessment before it then moves into developing a positive behavior support plan. There is no universal definition of an FBA. You won't find one anywhere. You won't find one in the IDA or state regulations. But it is self-explanatory. The job is for the IEP team to determine the target behaviors and what function are they serving so that a replacement behavior can be taught at an age appropriate. So that's an assessment. And as Mr. Shields pointed out, pursuant to the hearing officer's order, that has been completed. Now, according to this Court's stay, it has not been issued. To respect that stay, but the observation and the write-up has been completed, but it is just waiting to be issued pending the disposition of this interlocutory matter. Your adversary seems to argue that there's some irreparable harm that could occur by release of the FBA. How do you respond to that? We disagree with that. The district disagrees with that, Your Honor. Number one, he states that consent is necessary. Again, there's an argument not for today whether or not consent is even needed for an FBA. Assuming that's even the case, Your Honor, the IDA implementing regulations allow for school districts to move for a due process hearing of its own if a parent won't consent to a reevaluation. So I'm not sure why a district would be allowed to do that if it weren't allowed to override a parent's lack of consent. And now here we have a hearing officer who has ordered that an FBA is appropriate. So we think it definitely is appropriate and necessary. I can't say how it's irreparable harm to get a better understanding of his child's learning and different behaviors that the hearing officer has determined exists. Any further questions? No further questions. Thank you, Your Honor. Mr. Shields. Your Honor, just a few points. First, I would point out that if Your Honors do, as I mentioned before, decide to send this back to the district court to make findings, I respectfully submit that the stay that this court added, keeping everything in the status quo, remained in effect. Your Honors do raise a good issue about whether or not the FBA falls in within the state court provision, and one would take the position, now that I'm thinking about it, that if the thing is to keep the status quo and by virtue of it being an automatic injunction of itself, yes, the FBA itself should be encompassed in that. I think that's a legal issue that you certainly can take a look at. It's an interesting issue. I thought the school district, by the way, they moved orally for a preliminary injunction before the school district did, arguing that even if the state position applies, the district court should order an immediate change in placement. But the district court didn't rule on that. Is that correct? Not that I'm aware of, Your Honor. What I would say also, Your Honor, is that I do take the position that an FBA does require consent. I've expressed in the briefs my concerns about these assessments being made by somebody that I'm being denied being able to pick summons against my consent. I don't know what the findings are going to be. I don't know what the effect would be on the child. I don't know the interaction that's taking place with the child. And with respect to the hearing officer, I mean, this was Mr. Warner seems to take the position that the hearing officer is the judge, jury, and appellate court. As the court pointed out, I have every right to bring this to the next level. I did exhaust my administrative remedies. I'm here now seeking the de novo review to say that these are problems that I had with the due process hearing itself, the time limits that were placed upon it and other issues, and that I should be able to expand the record, and that there are other issues involved. You do know that I did file an amended complaint. There are things that have gone on down the road. Let's assume for the moment, if we were to send this back to comply with Rule 52A, that's going to take time. And obviously, the one thing that I think probably people can agree on is that you and your ex-wife want to do what is best for the child. You may disagree what that is, but you want to do what is best for the child because you care. Time will have been – this will take significant amounts of time, and it may ultimately work to the detriment of the child. Whatever the issue is, whatever the diagnosis or the assessment is, whatever the way that it's handled in the individual educational plan, how do we deal with that? Your Honor, my answer to that is Congress has already made that decision. That's the purpose of the state court rule. I'm asking you a practical question. How do you deal with it? He's my child. I understand that, and you care. And I care, and believe me, and that's why you have this other case dealing with the Lower Marion case, and you have the importance of people saying, you know, I was denied mainstream, and now I don't want to get into that case. But I know – but the answer that you had in that thing is that if you disagree with that, bring it up at the time, not after it's over. Then it's too late. No, I'm doing exactly what this Court said I should do. I am dealing with that issue right now, and I respectfully submit that Congress has already made that decision. That mainstream is important. And this is not just as a lawyer. This is as a parent. You know, you have all the psychologists, and you have everybody else that say they're the experts. They got financial interests in the things, and I got issues too about how they're redefining everything. But by the same token, Your Honors, I'm a parent, and I can tell you the one thing that I have learned with the children, that the best for them to be is with those who are perhaps more advanced but would be with their peers because that's how they learn best, and to treat them like everybody else. What we're talking about is – Currently, is your son – my understanding at one point, he was 94% mainstreamed, and then it went back to 53% or something. No, that's what they were seeking. He's 94%. He's still 94%. He's still 94%. So, in fact – They were seeking 54%. The state foot provision works to what I understand you're desiring to have. Yes. That 94% of the time he is mainstream. Yes. And is he reading at a first grade level? Your Honors, I'm not an expert on that. As I said, I mean, this is something that they – I respectfully submit they had predetermined what they were going to do with these tests and things, and without my consent, without my knowledge, they took this child out of the classes and doing it. They were observing him no less than 23 times. I mean, the child is perceptive, and I think that shook up his confidence in everything else. I mean, this is where I get to this thing. I didn't want the kid labeled. I didn't want him treated differently. He's being treated differently than his peers. I mean, that gets into the Equal Protection Clause. And if you look, I did follow – I did respond to a motion to dismiss below, and that gets into these other things about discrimination and whatever. I don't know if you've read it, but there is – Yeah, but that's taking us away from the issue before us. Okay. But the important thing, too, is that, you know, as I said, from my perspective, treat him like everybody else. That's where he is, and that's how you learn best, and that's where I want to keep him. And, you know, obviously it's up for the court to finally decide, but by the same token, though, I think that, you know, to the extent that you say that in education we rely upon the experts, I think that the experts are also parents that have been through this and deal with these children, and you must listen to them. I respect this. I don't say must, but you should. And by the same token, though, education, you know, by the same token, though, we have three very learned judges, and you have learned. You've known what it is to be educated and whatever. And there was an interesting point, just digressing a bit, in the proceedings. You know, I asked the question because I guess you know who I was trained by. You know, and the big thing, too, for education was me and how I grew up, too, was that the Greeks and Plato and Aristotle and whatnot, I mean, that was the key to education. And I did ask a question during the due process hearing. They had no idea who or there was an objection as to Plato and this thing, whether or not they were familiar with Plato. But there was an interesting article in the New York Times the other day, about two weeks ago, that said basically in our educational system right now, it seems to have been taken over by psychology, and nowhere in psychology is there any place for Plato. But I don't know any six-year-old that reads Plato. No, but it's not that, too. No, what I want to get at, too, is frustration. I don't know of any 64-year-old that reads Plato. Okay, but it's not only that. It's also the educational method. You know, and frustration. I mean, this is the thing. I mean, I had a debate with the teachers on this, you know, where, you know, what's the level of frustration? Their position is that, you know, if you frustrate the kid too much, he's going to shut down. My position is that part of the frustration, particularly in that, and, you know, I don't want to totally degrade psychology, too. There is something to be said about positive reinforcement, you know, and there is something about that. But it has its limits. It has its limits, and to the extent, you know, I certainly don't want a psychology being used as a basis to overturn the IDEA, particularly with respect to mainstreaming. Thank you very much. Thank you. Thank you to both counsel, and we'll take the matter under advisement.